IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DAVID LEE BRADSHAW**,

    Plaintiff,

v.                                                                              Case No.   1:22-CV-00139-JHR-LF

**MANAGEMENT AND TRAINING CORPORATION**,
a foreign corporation doing business in New Mexico,
**RICARDO MARTINEZ**, as Warden of
the Otero County Prison Facility,
**JOHN DOES 1-5**, as employees or agents
of Management and Training Corporation,
**OTERO COUNTY BOARD OF COUNTY**
**COMMISSIONERS**,
**DAVID BLACK**, as Otero County Sheriff,
**JOHN DOES 6-10** as public employees of Otero County,
**NEW MEXICO CORRECTIONS DEPARTMENT**,
**ALISHA TAFOYA LUCERO**, as Secretary
of the New Mexico Corrections Department,
**JOHN DOES 11-15**, as public employees of the
New Mexico Corrections Department,

    Defendants.

### DEFENDANTS MANAGEMENT & TRAINING CORP., AND R. MARTINEZ'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STAY DISCOVERY

Defendants Management & Training Corp. ("MTC") and Warden R. Martinez ("Warden Martinez") (collectively "MTC Defendants"), by and through their attorneys at Sutin, Thayer & Browne (Christina Muscarella Gooch), and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully requests that this Court dismiss Plaintiff David Lee Bradshaw's ("Mr. Bradshaw") Complaint for Civil Rights Violations, Negligence, and Other Tortious Conduct, filed February 24, 2022 (the "Complaint") against the MTC Defendants for failure to state a claim upon which relief can be granted, and that discovery be stayed.

## BACKGROUND

Plaintiff has failed to provide substantive allegations demonstrating that the MTC Defendants, including Warden Martinez, committed an egregious or reckless failure to act in his

1

alleged role as supervisor, or that the MTC Defendants otherwise violated any civil rights or other state statutes or regulations. (*See generally* Complaint [Doc. 1].) Therefore, this Court must dismiss Plaintiff's Complaint [Doc. 1] with prejudice.

## LEGAL STANDARD

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint against defendants "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Further, where immunity is asserted, a stay of discovery is appropriate. *See Liverman v. Committee on the Judiciary of the U.S. House of Representatives*, 51 F.App'x 825, 827-28 (10th Cir. 2002) (stay of discovery until sovereign immunity is resolved).

## ARGUMENT

### I.     MTC Defendants Are Entitled to Qualified Immunity (Count I)

"State action may be found in the exercise by a private individual of powers traditionally exclusively reserved to the state." *Young v. Gila Regional Medical Ctr*, 2021-NMSC-042, ¶ 11, 495 P.3d 620, 634 (citing and quoting *Rodriques v. Furtado*, 950 F.2d 805, 813 (1st Cir. 1991)). In *Filarsky v. Delia,* the Supreme Court expressly held that "[a] private individual temporarily retained by the government to carry out its work is entitled to seek qualified immunity from suit under § 1983." 132 S.Ct. 1657, 1670 (2012); *see also Herrera v. Santa Fe Pub. Sch.,* 41 F. Supp. 3d 1027, 1188 (D.N.M. 2014) (quoting *Warner v. Grand Cnty.*, 57 F.3d 963, 967 (10th Cir. 1995) ("[a] private individual who performs a government function pursuant to a state order or request

is entitled to qualified immunity if a state official would have been entitled to such immunity had he performed the function himself.").

MTC operates and manages the Otero County Prison Facility (OCPF) on behalf of the New Mexico Corrections Department ("NMCD"). Complaint, [Doc. 1], ¶ 2. Housing inmates for NMCD is a public function. Defendants Martinez was an MTC employee when the alleged actions or omissions occurred. *Id*. ¶ 4. Accordingly, they are entitled to qualified immunity. *See, e.g., Filarsky v. Delia,* 132 S.Ct. 1657, 1670 (2012).

When facing a Section 1983 claim, "[a] public official or employee is entitled to qualified immunity unless 'clearly established' federal rights of which a reasonable person would have known are shown to have been violated." *Smith v. Allbaugh*, 987 F.3d 905, 909 (10th Cir. 2021). A plaintiff must allege that: 1) the defendant violated a constitutional right and 2) the constitutional right was clearly established at the time of the violation. *Quintana v. Santa Fe Cty Bd of Comm'rs*, 973 F.3d 1022, 1057 (10th Cir. 2020). Whether a right is "clearly established" is an objective test: "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Stearns v. Clarkson,* 615 F.3d 1278, 1282 (10th Cir.2010) (quotation omitted). "In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).

"Though 'a case directly on point' is not required, "existing precedent must have placed the constitutional question regarding the illegality of the defendant's conduct beyond debate." *Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020). "Ordinarily ... there must be a Supreme

Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.*

Here, Plaintiff impliedly claims that the clearly established right is a misclassified, less threatening inmate should be protected from being housed with more threatening inmates who eventually attacked him or her, while prison officials had no reason or belief that the inmate could be subject to such an attack. Complaint [Doc. 1], ¶¶ 40-45; 94-105; 346-349. MTC Defendants have not identified any Supreme Court or Tenth Circuit decisions that demonstrate clearly established authority related to Plaintiff's claims. Therefore, MTC Defendants are entitled to qualified immunity. As such, Count I should be dismissed as to the MTC Defendants with prejudice because the MTC Defendants are protected from such actions through qualified immunity.

## II. Plaintiff has Failed to Plead a Sufficient Claim for Supervisory Liability (Count I)

"A plaintiff arguing for the imposition of supervisory liability [under § 1983] '… must show an 'affirmative link' between the supervisor and the constitutional violation.'" *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) (citation omitted). Generally, "[t]he requisite showing of an 'affirmative link' between a supervisor and the alleged constitutional injury has '[come] to have three related prongs: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind.'" *Id.* (citation omitted). However, the exact application and analysis of such "affirmative link", and its factors, appears to vary between the different potential categories of supervisory liability, which has been made somewhat unclear since *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Dodds v. Richardson*, 614 F.3d 1185, 1212-13 (10th Cir. 2010) (Tymkovich, J. concurring). "In sum, our decisions hold that supervisors are liable for constitutional violations they cause." *Id.* at 1213. "The exact contours of causation–especially regarding an official's state

of mind sufficient for liability–are uncertain in light of *Iqbal*." *Id*. What is certain, however, is that Plaintiff's claim for supervisory liability under § 1983, based upon an alleged failure to supervise, must be supported by a showing of "deliberate indifference." *Id.* at 1212. This means a plaintiff must provide evidence showing that "a supervisor has somehow caused the violation to occur by an *egregious* failure to act." *Id*. at 1212-13 (emphasis added); *see also D.T. v. Independent School Dist*., 894 F.2d 1176, 1193 (10th Cir. 1990) ("This court has applied the 'deliberate indifference' standard in many civil rights cases, although sometimes positing it in terms of reckless disregard or gross negligence. In all cases, we have applied a much more stringent test than ordinary negligence.") (citation omitted); *Sexson v. Wood*, 2016 WL 10538007, *10 (D.N.M. Apr. 20, 2016) (unpublished) ("Because 'mere negligence' is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with 'deliberate indifference' that a constitutional violation would occur." (citation omitted)). As such, to sufficiently state a claim for relief for cruel and unusual punishment under § 1983, a plaintiff must provide allegations which "rise to the level of [such] deliberate indifference." *Dubuc v. Johnson*, 201 F.3d 447, 1999 WL 1101851, *3 (10th Cir. Dec. 3, 1999) (unpublished).

Here, Plaintiff has failed to allege facts against Defendant Martinez which could be interpreted as establishing some purported "egregious act" at the level of "reckless disregard" sufficient to state a claim for supervisory liability. Even assuming, *arguendo*, that Defendant Martinez received haircuts from inmates, this is not an egregious act or him recklessly disregarding the safety of other inmates, including Mr. Bradshaw. The events that led to Mr. Bradshaw's injuries were the result of Mr. Bradshaw's dispute with Mr. Padilla, nothing more. Not only does Plaintiff fail to make any specific allegations against Defendant Martinez regarding Count 1

(Federal Civil Rights Claims) or Count 2 (State Law Claims), but most of Plaintiff's references to Defendant Martinez is lumped together with other defendants. (*See generally* Complaint [Doc. 1].)

Furthermore, "[p]rison wardens and private entities can be liable under § 1983, but only if they "had an 'official ... policy of some nature ... that was the direct cause or moving force behind the constitutional violations." *Chavez v. New Mexico Dep't of Corr.*, No. 20-CV-470 RB-KRS, 2021 WL 1517924, at *2 (D.N.M. Apr. 16, 2021). Although the Complaint listed a handful of unrelated and irrelevant previous cases to imply MTC has a policy or custom of being involved with similar violent situations, these cases cannot be properly used to imply this was the direct cause of what happened to Bradshaw, and not one of Plaintiff's identified cases involved management or operation at OCPF. Complaint [Doc. 1], ¶¶ 206-259; *see also Chavez*, 2021 WL 1517924, at *2 (dismissing § 1983 claims because Plaintiff failed to allege that defendants adopted a policy that caused the attack).

Here, there is no evidence that the MTC Defendants had information or reasons to believe Mr. Bradshaw was in danger. Further, based on the allegations in the Complaint, it appears the entire incident escalated quickly after Mr. Bradshaw made a comment about freeloading from another inmate. Complaint [Doc. 1], ¶¶ 94-102. Since the MTC Defendants did not commit "egregious acts" that are sufficient to support a claim of supervisory liability, and MTC Defendants do not have a practice or policy that supports such acts, all federal claims regarding supervisory liability should be dismissed against MTC Defendants.

### III. MTC Defendants Are Entitled to Immunity Under the New Mexico Tort Claims Act ("TCA") (Count II)

*a. MTC is a "governmental entity" and Warden Martinez is a "public employee"*

The TCA defines a governmental entity as "the state of New Mexico or any of its branches, agencies, departments, boards, instrumentalities or institutions." NMSA 1978, § 41-4-3(B), (H). It

defines "public employee" as "an officer, employee or servant of a governmental entity… including… persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation". § 41-4-3 (F)(3). The TCA applies to instrumentalities of the state and persons acting on behalf of or in service of instrumentalities of the state. *Id.* §§ 41-4-3 (B), (H), & (F)(3). Under the TCA, state governmental entities and public employees acting in the scope of the official duties enjoy sovereign immunity, unless it is expressly waived. NMSA 1978, § 41-4-4(A). "A state's sovereign immunity precludes suits against a state or its employees except as specified where immunity has been waived." *Roybal-Mack v. NM Dept of Public Safety*, 2017 WL 3025921 (D.N.M. 2017).

MTC, albeit a private entity, fits this definition of "governmental entity." Under New Mexico law, "a private organization, despite its name or legal status, may have so many public attributes it can no longer be considered private." *Memorial Medical Ctr. v. Tatsch Const., Inc.*, 2000-NMSC-030, ¶ 34. In cases such as this, the issue becomes whether the relationship between a public entity and a private entity is such that the provisions of a statute binding on the public entity will also bind the private entity. *Id.* ¶ 21. To determine if such a relationship exists, courts must analyze the "totality of the circumstances" of the relationship in light of the Legislature's purpose in establishing the statute under consideration. *Id.* ¶ 35.

In *Memorial Medical Ctr.*, the New Mexico Supreme Court established that the factors a district court may consider when assessing whether the provisions of a statute binding on a public entity will also be binding on a private entity include: (1) government funding; (2) public purpose; (3) continuing control over the private entity, even if it is potential control; (4) continuing control over the current or final product of the contract; (5) whether the activity of the private entity is

conducted on publicly owned property; (6) the potential relationship created by the legal contract that binds the entities; and (7) the actual day-to-day relationship among them. *Id.* ¶ 35, n.2.

The New Mexico Supreme Court's analysis in *Memorial Medical Ctr.* has resulted in New Mexico courts concluding that, in certain circumstances, private entities fall under statutory definitions normally reserved for public entities. For instance, in *N.M. Foundation for Open Gov't. v. Corizon Health*, 2020-NMCA-014, the Court of Appeals held that the New Mexico Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 applied to litigation settlement documents between inmates and Corizon Health, a private healthcare provider. *Id.* ¶ 21. In *Corizon*, the Court of Appeals reasoned that the settlement documents concerned Corizon Health's exercise of the public function of providing medical care to inmates. *Id.* As such, the Court of Appeals concluded that the documents were public records and subject to disclosure, notwithstanding Corizon Health's status as a private entity. *Id.*

Importantly, the New Mexico Court of Appeals upheld the district court's decision to issue a writ of mandamus, even though "[m]andamus lies only to force a clear legal right against one having a clear legal duty to perform an act and where there is no other plain, speedy and adequate remedy in the ordinary course of law." *Id.* (internal quotation marks and citation omitted). The Court of Appeals further held that the writ was proper because Corizon Health "acted on behalf of a public entity" by providing medical care to inmates at various New Mexico correctional and detention facilities, and thus found a clear duty to perform an act. *Id.* ¶ 26.

Other New Mexico decisions have reached similar results. *See*, *e.g.*, *Thompkins v. Carlsbad Irrigation Dist.*, 1981-NMCA-072, ¶¶ 11-12 (holding that an irrigation district was a local public body under the Tort Claims Act); *State ex rel. Toomey v. City of Truth or Consequences*, 2012-NMCA-104, ¶ 25 (holding that, under the totality of factors, a private

8

company was acting on a city's behalf and subject to IPRA requests).  In fact, district courts have held that MTC is a public body. *See generally* Order Denying MTC's Motion to Dismiss For Lack Of Jurisdiction, *ACLU v. MTC, et al*, No. D-1215-CV-2020-00232 (December 4, 2020); Order Denying Motion to Dismiss ("Order"), *Human Rights Defense Center v. MTC, et al*, No. D-101-CV-2020-01447 (November 17, 2020). In the *Human Rights Defense Center* Order, Judge Wilson found that MTC was "performing a public function on behalf of a public entity." Order, *Human Rights Defense Center*, No. D-101-CV-2020-01447 (November 17, 2020), ¶ 5.

The TCA defines "public employee" as "an officer, employee or servant of a governmental entity… including… persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation". NMSA 1978, § 41-4-3 (F)(3). Warden Martinez was the warden of OCPF at all relevant times. Complaint [Doc. 1], ¶ 4.  Thus, he is a "public employee" as defined by the TCA.  § 41-4-3 (F)(3).  Since Defendant MTC is a "governmental entity" and Warden Martinez is a "public employee" Count I should be dismissed.

    b.  *MTC Defendants are Not Law Enforcement Officers*

Wardens are not law enforcement officers for the purposes of the waiver of immunity under § 41-4-12. *Wittkowski v. State*, 1985-NMCA-066, ¶¶ 14-16, 103 N.M. 526, *overruled on other grounds by Silva v. State*, 1987-NMSC-107, 106 N.M. 472.  The TCA defines "law enforcement officer" as a "full-time salaried public employee of a governmental entity whose ***principal duties*** under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor." NMSA 1978, § 41-4-3(D) (2015) (emphasis added).

To determine whether a public employee holds the position of a law enforcement officer, New Mexico courts "look at the character of the principal duties involved, those duties to which employees devote the majority of their time." *Anchondo v. Corrections Dept.*, 1983-NMSC-051,

9

¶ 10, 100 N.M. 108. A defendant does not become a law enforcement officer merely by being employed in a prison. *Id.* ¶ 11. Instead, a public employee's primary or principal duties must be of "direct law enforcement nature." *Id.* ¶ 13. In *Anchondo*, the New Mexico Supreme Court provided a list of law enforcement duties that included the following:

> (1) dealing directly with the daily custodial care of prison inmates;
> (2) preserving the public peace;
> (3) preventing and quelling public disturbances; and
> (4) enforcing state laws, including but not limited to the power to make arrests for violation of state laws

*Id.* ¶¶ 7-8. Only those persons who possess these responsibilities as their primary duties are law enforcement officers. *Id.* ¶ 11. In *Anchondo*, the New Mexico Supreme Court held that the state penitentiary's warden was not a law enforcement officer for purposes of § 41-4-12 because the warden acted as an administrative officer. *Id.* ¶ 1.

Here, neither MTC nor Warden Martinez are law enforcement officers. Since a law enforcement officer must be a public *employee* of a governmental entity, MTC—as a governmental entity—cannot be law enforcement officer. *See* § 41-4-3(D) (defining law enforcement as a "public employee of a governmental entity" with certain enumerated duties); *Wittkowski,* 1985-NMCA-066, ¶ 16 ("The corrections department is not within the definition [of § 41–4–3]"). Indeed, New Mexico Courts have routinely held that prison employees are not law enforcement officers. *See id.* (holding that prison wardens are not law enforcement officers); *Callaway v. New Mexico Dept. of Corr.*, 1994-NMCA-049, ¶ 12, 117 N.M. 637 (holding that "corrections officers are not law enforcement officers"). Further, even if a prison employee performs incidental law enforcement officer duties, which corrections officers do not, those duties must be his or her primary duties, those he or she devotes a majority of his or her time. The plain meaning of the term "warden" is "an official in charge of the operation of a prison". Warden Definition, Merriam-Wesbster.com, https://www.merriam-webster.com/dictionary/warden (last visited Apr. 4, 2022). Because a

warden's role is primarily administrative, Warden Rios is not a law enforcement officer. *Anchondo*, 1983-NMSC-051, ¶ 1.

Amendments that first occurred in May 2020 to § 41-4-12 do not affect the aforementioned analysis. First, the incident at issue here occurred between December, 2019 and March 5, 2020, before the amendments occurred, and the amendments are not retroactive. "[T]he general rule is that statutes apply prospectively unless the Legislature manifests clear intent to the contrary." *Wood v. State of N.M. Educ. Ret. Bd.*, 2011-NMCA-020, ¶ 21, 149 N.M. 455. Where the language of a statute "does not specifically evince a legislative intent that the act should be applied retrospectively," the law must be applied prospectively. *City of Albuquerque v. State ex rel. Vill. of Los Ranchos de Albuquerque,* 1991-NMCA-015, ¶ 32, *111 N.M. 608.* Yet, where a statutory amendment clarifies the existing law, the amendment is retroactive. *Id.* ¶ 37. A clarification occurs when a statute is amended to clarify what was previously implicit in the law. *Id.* Because the amendment provides a change to the existing definition of "law enforcement officer" rather than clarifying what was already implicit in the law, it is not retroactive. *Ortega v. Edgman*, slip op., 2022 WL 796374, *7 (D.N.M. March 16, 2022); *see also Garcia v. Martinez*, slip op., 2020 WL 2615533, at *3 (D.N.M. May 22, 2020) (finding that the 2020 amendments to Section 41-4-12 are not retroactive). In sum, MTC and Warden Martinez are not law enforcement officers. Therefore, Count II should be dismissed with prejudice.

  c. *The TCA Does Not Waive MTC Defendants' Entitlement to Immunity Because the MTC Defendants Did Not Create an Unsafe Condition that Constitutes a Waiver of Immunity*

Each of Mr. Bradshaw's state claims are based on negligence. Section 41-4-6(A) provides "[t]he immunity granted pursuant to [§ 41-4-4(A)] does not apply to liability for damages resulting from … injury ... caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building." Although a physical defect in the

11

premises is not required, the negligence must create "an unsafe, dangerous, or defective condition on property," *Callaway v. NMCD*, 1994-NMCA-049, ¶ 17, 875 P.2d 393, or "a general condition of unreasonable risk from negligent security practices," *id.* ¶ 18 (quoting *Archibeque v. Moya*, 1993-NMSC-079, ¶ 9, 116 N.M. 616, 620, 866 P.2d 344, 348). However, it is clear under New Mexico law that "the security, custody, and classification of inmates does not comprise the "operation" and "maintenance" of penitentiary premises." *Archibeque*, 1993-NMSC-079, ¶ 9.

Further, The TCA does not waive MTC Defendants' immunity for prima facie tort. *See Derringer v. State*, 2003-NMCA-073, ¶ 16, 133 N.M. 721, 725, cert. denied, 133 N.M. 727 (2003) (finding defendants immune from plaintiff's claim of prima facie tort because it "is not included in specific provisions of the Tort Claims Act").

In *Archibeque*, and similar to this case, the inmate-plaintiff argued that he was misclassified and put in a more dangerous housing area than what he should have been, as Mr. Bradshaw has alleged here. *Archibeque*, 1993-NMSC-079, ¶ 9. There, the New Mexico Supreme Court determined that "while [the] misclassification of [inmate-plaintiff] put him at risk, the negligence did not create an unsafe condition on the prison premises as to the general prison population. Reading Section 41–4–6 to waive immunity every time a public employee's negligence creates a risk of harm for a single individual would subvert the purpose of the Tort Claims Act, which recognizes that government, acting for the public good, 'should not have the duty to do everything that might be done,' and limits government liability accordingly." *Id.* at ¶ 11.

MTC Defendants did not create an unsafe condition as could be necessary to constitute a waiver of immunity. MTC Defendants do not waive immunity "every time [negligence] creates a risk of harm for a single individual[.]" *Id.* Furthermore, MTC Defendants had no knowledge or a reason to believe Mr. Bradshaw was at risk. MTC Defendants should not be imposed with a duty

that requires them to eliminate a risk of harm that they are not aware of, and they certainly do not have a duty to do everything that "might be done" even if it had known of such a risk. *Id.*

Further, the TCA § "41-4-6's waiver does not extend to the 'negligent performance of administrative functions.'" *Id. at* ¶ 7. The misclassification of an inmate and the general oversight of operations are administrative functions, and thus the waiver does not extend to the negligent performance of these functions. *Id.* at ¶ 8 ("[Prison officer] was not operating and maintaining the prison's physical premises when she negligently classified Archibeque as an inmate that could be released into the general prison population. Rather, she was performing an administrative function associated with the operation of the corrections system.").

Since the MTC Defendants did not create an unsafe condition necessary to constitute a waiver of immunity, they benefit from sovereign immunity under the New Mexico Tort Claims Act, and Count II should be dismissed as to the MTC Defendants with prejudice.

### IV.     Discovery Should be Stayed Until the Issue of Immunity is Resolved

"The Supreme Court has recognized where a defense of qualified immunity has been raised, '[u]ntil [the] threshold immunity question is resolved, discovery should not be allowed.'" *Liverman v. Comm. On The Judiciary, U.S. House Of Representatives*, 51 F. App'x 825, 827 (10th Cir. 2002) (citing *Siegert v. Gilley,* 500 U.S. 226, 231 (1991)). Therefore, because MTC Defendants have not consented to be parties in this case, and are immunity based defenses within this motion, discovery should be stayed until those issues have been resolved.

### CONCLUSION

The Court should dismiss the Complaint [Doc. 1] as to MTC Defendants with prejudice because the MTC Defendants benefit from immunity as it relates to both the federal and state claims, and Plaintiff has failed to state a claim as a matter of law. Further, the Court should stay discovery until the issue regarding sovereign immunity is resolved. Accordingly, MTC Defendants

respectfully request that the Court dismiss Plaintiff's Counts I and II against MTC Defendants with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), temporarily stay discovery, and for other such relief that the Court deems just and proper.

> Respectfully submitted,
>
> SUTIN, THAYER & BROWNE
> A Professional Corporation
>
> By: _____
> Christina Muscarella Gooch
> P.O. Box 1945
> Albuquerque, NM 87103
> Telephone: (505) 883-3433
> tmg@sutinfirm.com
> *Attorneys for MTC Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 12, 2022 I filed the foregoing pleading electronically through the CM/ECF System, which caused the following counsel of record to be served by electronic means:

Arne Leonard
Carolyn M. "Cammie" Nichols
Rothstein Donatelli LLP
500 Fourth St NW #400
Albuquerque, NM 87102-2174
505-243-1443
Fax: 505-242-7845
Email: aleonard@rothsteinlaw.com
cmnichols@rothsteinlaw.com
*Attorneys for Plaintiff*

Linda G. Hemphill
Leigh Messerer
The Hemphill Firm PC
P.O. Box 33136
Santa Fe, New Mexico 87594-3136
505-986-8515
Fax: 505-986-1132
linda@hemphillfirm.com
leigh@hemphillfirm.com
*Attorneys for Plaintiff*

William H. Snowden
The Snowden Law Firm PC
3550 Trinity Dr #B-4
Los Alamos, New Mexico 87544-1775
505-695-6183
whsnowden@yahoo.com
*Attorneys for Plaintiff*

By: _____
Christina Muscarella Gooch

6282206