# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

DAVID LEE BRADSHAW,

    Plaintiff,

                                        1:22-cv-00139-MIS-LF

v.

MANAGEMENT AND TRAINING
CORPORATION, RICARDO MARTINEZ,
as Warden of the Otero County Prison
Facility, OTERO COUNTY BOARD OF
COUNTY COMMISSIONERS,
DAVID BLACK, as Otero County Sheriff,
NEW MEXICO CORRECTIONS
DEPARTMENT, ALISHA TAFOYA
LUCERO, as Secretary of the New Mexico
Corrections Department, JOHN DOES 1-5,
as employees or agents of Management
Training Corporation, JOHN DOES 6-10,
as public employees of Otero County,
JOHN DOES 11-15, as public employees of
New Mexico Corrections, WEXFORD
HEALTH SOURCES, INC., RICHARD AYALA,
as employee or agent of Management and
Training Corporation, DAVID JAQUEZ, as
employee or agent of Management and Training
Corporation, JOSE OLAGUE, as employee or
agent of Management and Training Corporation.
KESHAB PAUDEL, M.D., as employee or agent
of Wexford Health Sources, Inc., and
MATTHEW ROUNSEVILLE, D.O., as employee
or agent of Wexford Health Sources, Inc.,

    Defendants.

**OMNIBUS ORDER GRANTING DEFENDANT OTERO COUNTY BOARD OF COUNTY COMMISSIONERS' AMENDED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, GRANTING IN PART AND DENYING IN PART DEFENDANTS NEW MEXICO CORRECTIONS DEPARTMENT AND SECRETARY ALISHA TAFOYA LUCERO'S 12(b)(6) MOTION TO DISMISS, AND GRANTING DEFENDANT DAVID BLACK'S MOTION TO DISMISS UNDER RULE 12(b)(6)**

**THIS MATTER** is before the Court on Defendant Otero County Board of County Commissioners' Amended Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 59, filed April 3, 2023.  Plaintiff David Lee Bradshaw filed a Response on April 14, 2023, ECF No. 65, to which the Otero County Board of County Commissioners ("Otero County") filed a Reply on April 27, 2023, ECF No. 70.

Also before the Court is Defendant New Mexico Corrections Department and Secretary Alisha Tafoya Lucero's 12(b)(6) Motion to Dismiss, ECF No. 60, filed April 2, 2023.  Plaintiff filed a Response on April 14, 2023, ECF No. 63, to which the New Mexico Corrections Department and Secretary Lucero (collectively, the "NMCD Defendants") filed a Reply on April 28, 2023.

Also before the Court is Defendant David Black's Motion to Dismiss Under Rule 12(b)(6), ECF No. 61, filed April 3, 2023.  Plaintiff filed a Response on April 14, 2023, ECF No. 64, to which Black (hereafter, "Sheriff Black") filed a Reply on April 28, 2023, ECF No. 72.

Upon review of the Motions, Responses, Replies, the record, and the relevant law, the Court will **GRANT** Sheriff Black and Otero County's Motions, and **GRANT IN PART AND DENY IN PART** the NMCD Defendants' Motion.

## I.      Relevant background[1]

During the relevant period, Defendant New Mexico Corrections Department ("NMCD") contracted with Defendant Otero County to house inmates in state custody at the Otero County Prison Facility ("OCPF").  ECF No. 1 ¶¶ 2, 10.  Otero County, in turn, contracted a privately-held corporation, Defendant Management and Training Corporation ("MTC"), to operate and maintain OCPF.  Id. ¶ 2.  OCPF contained a county-owned medical unit which operated as an infirmary, clinic, or like facility.  Id. ¶ 7.  During the relevant period, Defendant David Black was the Otero County Sheriff, id. ¶ 8, and Secretary Lucero was the Secretary of NMCD, id. ¶ 11.

Defendant Wexford Health Sources, Inc. ("Wexford") is a privately-held corporation that contracted with NMCD to provide health care services to inmates in state custody at NMCD facilities, including the Central New Mexico Correctional Facility ("CNMCF").  Id. ¶ 13.  Wexford employed Defendants Keshab Paudel, M.D., and Matthew L. Rounseville, D.O., under its government contract with NMCD.  Id.

Plaintiff is a former law enforcement and corrections officer in New Mexico.  ECF No. 55 ¶ 22.  During his career in law enforcement and corrections, Plaintiff had numerous interactions with inmates and criminal suspects, and testified as a witness for the prosecution in many criminal cases.  Id. ¶ 23.

In March 2018, Plaintiff was involved in an altercation during a traffic stop which resulted in Plaintiff being criminally prosecuted in Chaves County District Court.  Id. ¶¶ 30-35.  A jury found Plaintiff guilty of aggravated assault and abuse of a child not resulting in death or great

---

[1]      The Court accepts the truth of all well-pleaded factual allegations in Plaintiff's Amended Complaint and draws all reasonable inferences in Plaintiff's favor.

bodily harm.  Id. ¶ 34.  On October 11, 2019, the court sentenced Plaintiff to a total of two years' confinement.  Id.

NMCD took Plaintiff into custody at CNMCF and placed him in the restricted housing unit ("RHU") due to his status as an ex-law enforcement officer.  Id. ¶ 37.  During this period and thereafter, Plaintiff was publicly identified as a witness for the prosecution in pending criminal cases based on his prior work as a law enforcement officer.  Id.  When meeting with NMCD's Security Threat Intelligence Unit ("STIU") and classification staff at CNMCF's Reception Diagnostic Center ("RDC") during the intake process, Plaintiff explained his status as a law enforcement officer and prosecution witness, and stated that it would be better to house him at a location where he would be separated from the general inmate population with appropriate security measures in place.  Id. ¶ 38.

> [Plaintiff] was told that these factual details did not matter and were not of interest to Defendant NMCDF's classification and STIU staff at CNMCF. Instead, they followed a systemic policy, custom, and practice of using an arbitrary and inflexible rule that any reporting of law enforcement or corrections experience by an inmate automatically resulted in placement in one of two dormitories at OCPF, without regard to other factors such as the nature and extent of that experience, whether it made the inmate subject to being called as a witness for the prosecution in criminal cases during their incarceration, the type of criminal cases in which the inmate would be called to testify, what was actually going on in the dormitories at OCPF to which the inmate would be assigned, or who else was housed in those dormitories at the time.

Id. ¶ 39.

CNMCF, NMCD, and later MTC, were notified that Plaintiff had significant medical conditions that required ongoing treatment, including diabetes, hypertension, rheumatoid arthritis, and gout.  Id. ¶ 41.  The Amended Complaint alleges that the defective classification system "did not properly account for [Plaintiff's] serious medical conditions," and that Defendants "NMCD, Lucero, MTC, and Martinez knew that the provision of health care services at OCPF and CNMCF

was inadequate and dysfunctional on a systemic level, but they decided to ignore those facts and continue directing their staffs to house [Plaintiff]" there anyway.  Id. ¶ 42.  On December 5, 2019, Plaintiff was transferred to OCPF "based on the above-described policy, custom, and practice of sending all inmates who reported any law enforcement or corrections experience to OCPF, regardless of the circumstances."  Id. ¶ 43.

Based on an assessment of his risk of violence and escape, NMCD and MTC classified Plaintiff as a Levell II inmate and elected to house him in the same open dormitory as other inmates who posed a significant danger to him.  Id. ¶¶ 44-45.  The Initial Classification Committee at OCPF assigned Plaintiff to general population in Unit S2—a twenty-two-bed open dormitory where inmates live in close quarters and sleep in bunkbeds located immediately adjacent to one another without walls or dividers separating them.  Id. ¶ 46.

Plaintiff learned that three other inmates in Unit S2—Mario Padilla, Jesus "Jesse" Soto, and Joseph Apodaca—were running an extortion racket in Unit S2.  Id. ¶¶ 54-87.  Plaintiff's attempts to extricate himself from the extortion racket angered the racketeers.  Id. ¶ 94.

On March 1, 2020, Mr. Padilla attacked Plaintiff in the bunk area of Unit S2, breaking his jawbone on both sides of his face, damaging his teeth and mouth, and causing serious personal injuries that required emergency medical attention as well as multiple surgeries and long-term care.  Id. ¶ 105; see also id. ¶ 119.  Plaintiff was taken to University Hospital in El Paso where he underwent surgery and remained for four days.  Id. ¶¶ 113, 118-21.  On March 4, 2020, Plaintiff was discharged from the hospital and returned to OCPF.  Id. ¶¶ 122, 140.  He was subsequently transferred to CNMCF and then to a detention facility in Dona Ana County, based on his status as a witness for the prosecution in three state court cases.  Id. ¶¶ 130, 134-37.  Over the next several months, Plaintiff experienced serious infections and swelling in his mouth.  Id. ¶¶ 133-71.

In September 2020, Plaintiff returned to CNMCF.  Id. ¶ 176.  "Defendants Wexford, Paudel, and Rounseville, as well as other employees of Wexford and NMCD, knew that [Plaintiff] was still in need of further surgery and medical treatment for his broken jaw and related injuries . . . ."  Id. ¶ 178.  "But rather than provide him with timely and necessary medical care or arrange for him to be medically paroled so he could obtain such care for himself, Defendants Wexford, Paudel, Rounseville, and other Wexford employees advised [Plaintiff] to simply postpone that care until after his release date."  Id.  At the end of December 2020, Plaintiff was released on parole. Id. ¶ 179.

On February 24, 2022, Plaintiff initiated this lawsuit.  ECF No. 1.  On March 20, 2023, Plaintiff filed the operative First Amended Complaint for Civil Rights Violations, Negligence, and Other Tortious Conduct.  ECF No. 55.  Relevant here are Counts III and IV:

- Count III alleges claims against Otero County, Sheriff Black, and John Does 6-10 for:

  1) negligent operation and maintenance of buildings, machinery, equipment, and furnishings at county-owned facilities, id. ¶¶ 437-45;

  2) negligent operation of infirmaries, health care clinics, or like facilities, id. ¶¶ 446-51; and

  3) negligent dereliction of statutory duties, id. ¶¶ 452-60;

- Count IV alleges claims against NMCD, Secretary Lucero, and John Does 11-15 for:

  1) negligent operation of infirmaries, health care clinics, or like facilities, id. ¶¶ 464-69;

  2) negligent operation of buildings, machinery, equipment, and furnishings, id. ¶¶ 470-75; and

  3) neglect and abdication of statutory duties by NMCD law enforcement officers, id. ¶¶ 476-83.

On April 3, 2023, Otero County, the NMCD Defendants, and Sheriff Black filed their respective Motions to Dismiss for failure to state a claim under Rule 12(b)(6).  ECF Nos. 59, 60, 61.

## II. Legal standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal if the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This pleading standard does not impose a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully."  Id.  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice.  Twombly, 550 U.S. at 555. Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the claim across the line from conceivable or speculative to plausible." Brooks v. Mentor Worldwide LLC, 985 F.3d 1272, 1281 (10th Cir. 2021).

## III. Discussion

Sheriff Black argues that the Amended Complaint fails to assert any factual allegations specifically against him that would give rise to liability.  ECF 60 at 4-8.  Otero County, the NMCD Defendants, and Sheriff Black argue that they are entitled to sovereign immunity from Plaintiff's claims under the New Mexico Tort Claims Act ("NMTCA").  ECF Nos. 59, 60, 72.  The Court will first address whether the Amended Complaint states a claim against Sheriff Black, and then address whether Defendants are entitled to immunity.

### A.  Group pleading

Sheriff Black argues that the Amended Complaint fails to satisfy federal pleading standards because it groups Sheriff Black with John Does 6-10 and other unnamed Otero County Sheriff's Deputies without specifying which (if any) wrongful acts Sheriff Black committed.  ECF No. 61 at 5-8 (citing Khalik v. United Air Lines, 671 F.3d 1188, 1189-90 (10th Cir. 2012); Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008)).

In his Response, Plaintiff appears to concede that the Amended Complaint does not allege facts demonstrating that Sheriff Black himself committed any tortious conduct, but that he is vicariously liable for the tortious acts of his subordinates.  ECF No. 64 at 6-8.  He argues that the plausibility standard espoused by Iqbal and Twombly is "flexib[le]" in cases "applying the doctrine of vicarious liability to state-law claims subject to a waiver of liability [sic] under the NMTCA." ECF No. 64 at 7.[2]

In his Reply, Sheriff Black argues that federal pleading standards apply to Plaintiff's state law claims, ECF No. 72 at 3 (citing Adams v. C3 Pipeline Constr. Inc., 30 F.4th 943, 972 n.13 (10th Cir. 2021)), and "the First Amended Complaint fails to illustrate any factual allegations against the Sheriff and fails to distinguish his conduct from conclusory cumulative allegations made against cumulative groups of defendants[,]" id. at 5.

Rule 8—which applies to "all civil actions and proceedings in the United States district courts," Fed. R. Civ. P. 1—requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has interpreted this Rule to "demand[] more than an unadorned, the-defendant-unlawfully-harmed-

---

[2]        In his Response, Plaintiff further argues that Sheriff Black is subject to the waivers of immunity in Section 41-4-6, 41-4-9, and 41-4-12.  Sheriff Black responded to those arguments in his Reply.  The Court will address those arguments in the next section of this Order.

me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).  A complaint that contains "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8(a)(2).  Id. (quoting Twombly, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 555).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955.

Id.

"While the federal pleading standard does not vary across subject matters, the degree of specificity required for factual allegations depends on context." Shrum v. Cooke, 60 F.4th 1304, 1311 (10th Cir. 2023).  See also Robbins, 519 F.3d at 1248 ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context . . . .")  (citation omitted).  In cases, like this one, where several government agencies and individual actors are being sued, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." Id. at 1250 (citing Twombly, 550 U.S. at 565 n.10).  See also Pahls v. Thomas, 718 F.3d 1210, 1225 (10th Cir. 2013) (stressing the "need for careful attention to particulars, especially in lawsuits involving multiple defendants").

> When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights "were violated" will not suffice.  Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that "defendants" infringed his rights. See Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 532–33 (10th Cir.1998); see also Brown v. Montoya, 662

F.3d 1152, 1165 (10th Cir. 2011) ("The Complaint refers to actions of 'Defendants,' but that is not sufficient to show how Secretary Williams 'might be individually liable for deprivations of [Mr. Brown's] constitutional rights.'" (alteration in original) (quoting Robbins, 519 F.3d at 1250)).   Rather, it is incumbent upon a plaintiff to "identify <u>specific</u> actions taken by <u>particular</u> defendants" in order to make out a viable § 1983 or <u>Bivens</u> claim.  <u>Tonkovich</u>, 159 F.3d at 532 (emphases added); <u>see</u> <u>Lewis</u>, 604 F.3d at 1230 ("The record before us lacks any evidence suggesting <u>Dr. Tripp's</u> involvement in any of these . . . unlawful activities.").[3]

<u>Id.</u> at 1225-26.

Here, the Amended Complaint fails to identify any specific actions taken by Sheriff Black that would make him liable in tort to Plaintiff.  Rather, Count III refers to Otero County, Sheriff Black, and John Does 6-10 collectively as "the Otero County Defendants[,]" ECF No. 55 ¶ 439, and alleges that "[t]he Otero County Defendants'" negligence "was a direct and proximate cause of the injuries and resulting damages claimed by [Plaintiff] in this action[,]" <u>id.</u> ¶¶ 444, 450.  <u>See also</u> <u>id.</u> ¶ 459 (alleging that "[t]he failure of Defendants Black, John Does 6-10, and other Otero County sheriff's deputies under their direct supervision and control to comply with their duties under New Mexico statutes and common law as described above was a direct and proximate cause of the battery inflicted upon [Plaintiff] and the resulting injuries and damages claimed by [Plaintiff] in this action").  This type of group pleading fails to provide sufficient notice to the individual defendants of the allegations against them.  <u>Burnett v. Mortg. Elec. Registration Sys., Inc.</u>, 706 F.3d 1231, 1240 (10th Cir. 2013); <u>Gas Sensing Tech. Corp. v. Ashton</u>, Case No: 16-CV-272-F, 2017 WL 2955353, at *12 (D. Wyo. June 12, 2017).

---

3    Although <u>Robbins</u> and <u>Pahls</u> were civil rights actions under 42 U.S.C. § 1983 and <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), against multiple institutional and individual defendants, for pleading purposes there is no difference between a complaint alleging civil rights violations against multiple defendants and a complaint alleging state tort violations against multiple defendants.  <u>See</u> <u>Robbins</u>, 519 F.3d at 1249 ("[W]e apply the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally . . . .") (internal quotation marks and citation omitted).

Nor does the Amended Complaint identify any actions taken by anyone else that would subject Sheriff Black to vicarious liability.  Although the Amended Complaint alleges that Sheriff Black has "direct supervisory control over other County employees[,]" id. ¶ 8, it does not allege which County employee(s) under Sheriff Black's supervision committed the tortious act(s) for which he is vicariously liable.

The group pleading is especially troublesome in Count III because it alleges that "the Otero County Defendants" are liable to Plaintiff for (1) the negligent operation and maintenance of a building, i.e., OCPF, ECF No. 55 ¶¶ 440-45; (2) the negligent operation of infirmaries, health care clinics, or like facilities, i.e., the infirmary at OCPF, id. ¶¶ 446-51; and (3) dereliction of their duties in connection with the attack that occurred at OCPF, id. ¶¶ 452-60.  However, the Amended Complaint alleges that "Defendant MTC operated and maintained OCPF as a privately-run state prison facility . . . ." Id. ¶ 2.  Thus, not only does the Amended Complaint impermissibly engage in group pleading, it is implausible that Sheriff Black is liable for conduct that occurred (or failed to occur) at a privately-run prison facility.

For these reasons, the Court finds that the Amended Complaint fails to state a claim against Sheriff Black upon which relief can be granted.  See Lee v. McKinley Cnty. Adult Det. Ctr., No. 12-CV-1124 MCA/ACT, 2014 WL 12796876, at *10 (D.N.M. Mar. 31, 2014) (dismissing claim because, inter alia, it grouped together several institutional and individual defendants without distinguishing which acts were attributable to which defendant) (citing Robbins, 519 F.3d at 1250). However, even if the Amended Complaint plausibly alleged that Sheriff Black engaged in tortious conduct (or is vicariously liable for someone who engaged in tortious conduct), he is entitled to immunity for the reasons explained in the following section.

### B. Immunity

Defendants argue that they are entitled to sovereign immunity from Plaintiff's claims under the NMTCA.  ECF Nos. 59, 60, 72.

"The NMTCA preserves sovereign immunity against tort claims for state governmental entities and public employees acting in the scope of their duties, except as specifically waived." Fernandez v. Mora-San Miguel Elec. Co-op., Inc., 462 F.3d 1244, 1250 (10th Cir. 2006) (citing N.M. Stat. Ann. § 14-4-4(A)).  "Thus, if no specific waiver can be found in the NMTCA, a plaintiff's complaint against the governmental entity or its employees must be dismissed." Green v. Padilla, 484 F. Supp. 3d 1098, 1141-42 (D.N.M. Sept. 4, 2020).

Here, the Amended Complaint alleges that Defendants' immunity from tort suit is waived by three subsections of the NMTCA: (1) Section 41-4-6 (negligence in the operation or maintenance of a building); (2) Section 41-4-9 (negligence in the operation of a hospital, infirmary, or like facility); and Section 41-4-12, which "provides a waiver of immunity for certain torts committed by law enforcement officers and for negligence that causes a specified tort[,]" Oliverso v. Mitchell, 449 F.3d 1091, 1096 (10th Cir. 2006) (citing Methola v. Cnty. of Eddy, 622 P.2d 234, 238 (N.M. 1980); Caillouette v. Hercules, Inc.. 827 P.2d 1306, 1311 (N.M. Ct. App. 1992)).  See ECF No. 55 ¶¶ 6-12, 440-60, 464-83.

Defendants argue that the Amended Complaint fails to allege facts demonstrating that a waiver of immunity applies under these sections of the NMTCA.  ECF Nos. 59, 60, 72.

### 1. Section 41-4-6: Negligent maintenance of a building

Defendants argue that the NMTCA's waiver of immunity for negligent maintenance of a building, N.M. Stat. Ann. § 41-4-6, is inapplicable in this case.  ECF No. 59 at 6-8; ECF No. 60 at 11-13; ECF No. 72 at 6.  Otero County and the NMCD Defendants argue that "'the security,

12

custody, and classification of inmates does not comprise the 'operation' and 'maintenance' of penitentiary premises.'" ECF No. 59 at 7 (quoting Archibeque v. Moya, 866 P.2d 344, 348 (N.M. 1993)); ECF No. 60 at 12 (same).

Plaintiff argues that "Archibeque has been limited to its facts and only stands for the proposition that Section 41-4-6(A) does not apply to a discrete administrative decision regarding the classification of a single inmate that does not affect a particular segment of the population in a correctional facility." ECF No. 63 at 23 (citing Avalos v. Bd. of Cnty. Comm'rs of Dona Ana Cnty., No. CIV 06-0836 RB/LAM, 2007 WL 9733655, at *20 (D.N.M. Aug. 29, 2007)). He argues that NMCD's classification system, use of an open dormitory-style prison without an adequate number of trained correctional officers, and inadequate medical facility and staff are subject to the waiver of immunity contained in Section 41-4-6. Id. (citing Upton v. Clovis Muni. Sch. Dist., 141 P.3d 1259, 1261-65 (N.M. 2006); Leithead v. City of Santa Fe, 940 P.2d 459, 462-63 (N.M. 1997); Baca v. New Mexico, 911 P.2d 1199, 1201 (N.M. Ct. App. 1996)). He further argues that governmental entities and public employees are not exempt from liability under Section 41-4-6 simply because they engage a private contractor. Id. at 24 (citing Campbell v. Corrs. Corp. of Am., No. CIV 00-1147 MV/DJS, No. CIV 00-1286 MV/DJS, 2001 WL 37125275, at *7 (D.N.M. Mar. 20, 2001)); see also ECF No. 65 at 17-19.

In their Replies, the NMCD Defendants and Otero County maintain that Plaintiff's negligent maintenance of a building claim arises from his alleged misclassification, and the "classification of inmates" does not constitute the "operation" and "maintenance" of penitentiary premises. ECF No. 73 at 10 (citing Archibeque, 866 P.2d at 348); ECF No. 70 at 6-7. Sheriff Black argues that 41-4-6 does not apply to him because he "does not have any role in operating a privately-run state prison facility (and is not pled to have such a role) . . . ." ECF No. 72 at 6.

Section 41-4-6 waives sovereign immunity for "liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings."  N.M. Stat. Ann. § 41-4-6(A).  "For the waiver to apply, the negligent 'operation or maintenance' must create a dangerous condition that threatens the general public or a class of users of the building."  Upton, 141 P.3d at 1261 (citing Espinoza v. Town of Taos, 905 P.2d 718, 721 (1995); Castillo v. Cnty. of Santa Fe, 755 P.2d 48, 51 (1988)). "The waiver applies to more than the operation or maintenance of the physical aspects of the building, and includes safety policies necessary to protect the people who use the building."  Id. (citing Castillo, 755 P.2d at 50-51; Leithead, 940 P.2d at 461-63).

However, "[t]he 'operation' and 'maintenance' of the penitentiary premises, as these terms are used in Section 41–4–6, does not include the security, custody, and classification of inmates." Archibeque, 866 P.2d at 347.  Thus, immunity is not waived where, for example, the plaintiff is injured as a result of being misclassified as an inmate who could be safely released into the general prison population.  Id. (discussing Wittkowski v. New Mexico, 710 P.2d 93, 97 (N.M. Ct. App. 1985)).

On the other hand, "a prison may not release new inmates into a poorly monitored space with known gang members and items that could be used as weapons."  Encinias v. Whitener Law Firm, P.A., 310 P.3d 611, 618 (N.M. 2013) (citing Callaway v. N.M. Dep't of Corrs., 875 P.2d 393, 399 (N.M. Ct. App. 1994)).  Thus, immunity is waived where "the security practices in place resulted in unsafe conditions for the entire prison population."  Espinoza, 905 P.2d at 722 (citing Callaway, 875 P.2d at 399).

### a. Sheriff Black and Otero County

The Court finds that the waiver of immunity found in Section 41-4-6 does not apply to Sheriff Black or Otero County because the Amended Complaint does not plausibly allege that Sheriff Black or Otero County operated or maintained OCPF. To the contrary, the Amended Complaint affirmatively alleges that MTC, "a privately-held, for-profit Delaware corporation . . . operated and maintained OCPF as a privately-run state prison facility . . . ." Id. ¶ 2. Because they are not alleged to have operated or maintained OCPF (or any other building), Sheriff Black and Otero County are entitled to sovereign immunity as to Plaintiff's negligent maintenance of a building claim in Count III.

### b. NMCD Defendants

The Court further finds that the waiver of immunity found in Section 41-4-6 does not apply to the NMCD Defendants. First, the Amended Complaint alleges that MTC—and not NMCD— maintains and operates OCPF. Id.

Second, the only factual allegations relevant to the negligent maintenance of a building claim against NMCD with regard to OCPF concern Plaintiff's classification, see id. ¶¶ 37-53, and "[t]he 'operation' and 'maintenance' of the penitentiary premises, as these terms are used in Section 41–4–6, does not include the security, custody, and classification of inmates." Archibeque, 866 P.2d at 347. Classification of inmates is an "administrative function associated with the operation of the corrections system. Section 41–4–6 does not waive immunity when public employees negligently perform such administrative functions." Id.

Third, the only factual allegations relevant to the negligent maintenance of a building claim against NMCD with regard to CNMCF allege negligence in providing medical care to Plaintiff after he was injured by Mr. Padilla. See ECF No. 55 ¶¶ 132-34, 151-60, 166-71, 178-79. However,

assuming arguendo that a negligent maintenance of a building claim can encompass the negligent provision of medical care under the facts of this case—an issue not addressed in the Parties' briefs—the Amended Complaint fails to plausibly allege that the NMCD Defendants operated or maintained CNMCF's medical facility.  To the contrary, the Amended Complaint alleges that Defendant Wexford Heath Sources, "a privately-owned foreign for-profit corporation[,] . . . provide[d] comprehensive health care services to inmates in state custody, including Plaintiff . . . at NMCD facilities[,]" including CNMCF.  Id. ¶ 13; see also id. ¶ 325 (alleging that the NMCD Defendants "chose to award a contract to provide health-care services to inmates in state custody to Defendant Wexford Health Sources in 2019").  Additionally, even when construed in the light most favorable to Plaintiff, the Amended Complaint alleges that Wexford, Paudel, and Rounseville—not NMCD—failed to provide Plaintiff adequate medical care.  See id. ¶¶ 134 ("Defendants Wexford, Paudel, and Rounseville knew of this situation and did nothing to intervene on Mr. Bradshaw's behalf."); id. ¶ 160 ("Instead of accepting the specialists' recommendations for follow-up hospital admission at UNMH for revision surgery in August 2020, Defendants Wexford, Paudel, and Rounseville instead attempted to arrange for Mr. Bradshaw to be transferred from the Long Term Care Unit (LTCU) at CNMCF so he would again be lost to follow up."); id. ¶ 171 ("Defendants Wexford, Paudel, and Rounseville were aware of Mr. Bradshaw's condition at that time but failed to provide proper treatment or access to care as recommended by the UNMH specialists several months earlier."); id. ¶ 179 ("While in state custody and as a result of the extreme neglect and deliberate indifference of Defendants Wexford, Paudel and Rounseville, he never received the revision surgery recommended by the specialists at UNMH or adequate follow-up care for the injuries he sustained during Mr. Padilla's violent attack.").

Finally, the Court rejects Plaintiff's argument that Section 41-4-6 waives liability for public entities and employees for the acts of an independent contractor.  ECF No. 63 at 24 (citing Campbell, 2001 WL 37125275, at *7).  In Campbell, the plaintiffs, six inmates at the Torrance County Detention Center, were assaulted in the jail's gym.  2001 WL 37125275, at *1.  The plaintiffs subsequently sued, inter alia, Corrections Corporation of America ("CCA") and the Board of County Commissioners of Torrance County ("the Board") for negligence, alleging that the Board was "legally responsible for the operation of the Torrance County Detention Center," and that the detention center was "operated under contract between the State of New Mexico and [CCA]." Id. at *2, 6.  Judge Vazquez permitted the negligence claim to proceed against the Board and CCA.  Id.  Thus, Plaintiff appears to argue that Campbell stands for the proposition that a state entity can be held vicariously liable for the acts of an independent contractor.

However, Judge Vazquez did not hold that a state entity can be held vicariously liable for the acts of an independent contractor under Section 41-4-6's waiver provision, and the Court has found no other case so holding.  See Williams v. Cent. Consol. Sch. Dist., 952 P.2d 978, 983 (N.M. Ct. App. 1997) ("We do not mean to suggest that the state can be held vicariously liable under the Tort Claims Act for the negligence of independent contractors.").  Rather, Judge Vazquez appears to have based her decision on the fact that "[a] correctional facility may be jointly operated by private and government entities." Id. at *6 n.3 (emphasis added).[4]  Here, the Amended Complaint does not allege that Defendants jointly operated a correctional facility with an independent contractor.  Thus, Plaintiff's reliance on Campbell is unavailing.

---

[4]        The Court further notes that Judge Vazquez issued her decision in Campbell in 2001, before Twombly and Iqbal established the plausibility standard for complaints filed in federal court.

For these reasons, the NMCD Defendants are entitled to sovereign immunity as to Plaintiff's negligent maintenance of a building claim in Count IV.

### 2. Section 41-4-9: Negligent operation of a hospital, infirmary, or like facility

Next, Defendants argue that the NMTCA's waiver of immunity for negligent operation of a hospital, infirmary, or like facility, N.M. Stat. Ann. § 41-4-9, is inapplicable in this case.  ECF No. 59 at 4-6; ECF No. 60 at 9-11; ECF No. 72 at 6.

Section 41-4-9 waives sovereign immunity for "liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities."  N.M. Stat. Ann. § 41-4-9.  "Section 41-4-9 applies to the operation of facilities which provide medical care directly to people."  Redding v. City of Truth or Consequences, 693 P.2d 594, 596 (N.M. Ct. App. 1984).

### a. Otero County and Sheriff Black

Otero County and Sheriff Black argue that they are entitled to immunity because the Amended Complaint does not allege that they (or any County employees) (1) operated a hospital, infirmary, or like facility; or (2) provided medical care to Plaintiff.  ECF No. 59 at 5; ECF No. 72 at 6.  Otero County further argues that "when a governmental entity operating a detention facility contracts with a third-party to provide medical care at the facility, the waiver enumerated in § 41-4-9 is inapplicable."  ECF No. 59 at 5 (citing Lessen v. City of Albuquerque, 187 P.3d 179, 185 (N.M. Ct. App. 2008)).

Plaintiff argues that Otero County is vicariously liable for the negligence of its public employees acting within the scope of their duties.  ECF No. 65 at 14 (citing Silva v. New Mexico, 745 P.2d 380, 385 (N.M. 1987)).  He further argues that the Court should apply "the common-law

doctrine of hospital corporate negligence" under which a hospital that "employs or contracts with health-care providers still 'owes an independent duty of care to patients at the hospital.'" ECF No. 65 at 14 at 15-16 (quoting Diaz v. Feil, 881 P.2d 745, 749 (N.M. Ct. App. 1994)). In this regard, he appears to argue that Otero County can be held liable for negligently hiring MTC to run OCPF's medical facility because Otero County was on notice of MTC's "deficient performance in the past . . . ." ECF No. 65 at 16-17 (citing Compl. ¶¶ 191-92). As to Sheriff Black, Plaintiff argues that the Amended Complaint alleges that "he was injured by negligent operation of the medical unit at OCPF" and Sheriff Black "was on notice of the risk of injury created by lack of access to health care in the County's own detention facilities, as well as at OCPF." ECF No. 64 at 23. Plaintiff argues that Sheriff Black's "management and enforcement duties" render him liable under Silva, 745 P.2d at 385. Id.

It its Reply, Otero County maintains that the Amended Complaint fails to allege that Otero County operated a hospital, infirmary, or like facility, or that Otero County (or an employee thereof) provided Plaintiff medical care. ECF No. 70 at 3-4. It further argues that Lessen controls and requires a finding that Section 41-4-9 does not apply here.

Initially, the Court agrees with Otero County and Sheriff Black that the Amended Complaint fails to allege that they (or any County employee) (1) operated a hospital, infirmary, or like facility, or (2) provided Plaintiff medical care—and Plaintiff does not argue otherwise. Although the Amended Complaint alleges that OCPF contained a medical unit, ECF No. 55 ¶ 7, it alleges that Defendant MTC, "a privately-held, for-profit Delaware corporation . . . operated and maintained OCPF as a privately-run state prison facility under color of state law pursuant to a contract with Defendant Otero County Board of County Commissioners[,]" id. ¶ 2.

"New Mexico courts have generally denied the application of § 41-4-9 and found immunity for the state government entity and employees when medical contractors operate the medical unit in question."  Tanner v. McMurray, No. CIV 17-0876 JB\KBM, 2018 WL 6050675, at *40 (D.N.M. Nov. 19, 2018) (citing Lessen, 187 P.3d at 185).  In Lessen, the plaintiff sued the City of Albuquerque ("the City") for damages resulting from the alleged negligence in the provision of medical services at the Metropolitan Detention Center's ("MDC") infirmary.  187 P.3d at 180-81. The City contracted with a third party—Correctional Medical Services, Inc. ("CMS") to provide medical and mental health services at MDC.  Id. at 180.  The New Mexico district court granted summary judgment in favor of the city on the ground that the NMTCA does not waive immunity for the claims asserted by the plaintiff.  Id.  On appeal, the plaintiff argued that the City has a constitutional obligation to provide medical care to inmates at MDC and cannot escape liability by contracting with a third party to provide medical services.  Id.  The court of appeals agreed that a governmental entity remains liable for any constitutional deprivations caused by the policies or customs of the third party, but held that "a governmental entity's constitutional obligation [does not equate] with waiver of immunity for negligent operation of an infirmary under New Mexico's TCA."  Id. at 185.  "Because it was CMS that operated the infirmary or like facility at MDC," the court of appeals affirmed the district court's entry of summary judgment in favor of the City.  Id.

Similarly, here, the Amended Complaint seeks to hold Otero County and Sheriff Black liable under Section 41-4-9 for the alleged negligence in the provision of medical services at OCPF's medical unit.  ECF No. 55 ¶¶ 115-21, 446-51.  However, the Amended Complaint does not allege that Otero County or Sheriff Black operated OCPF or its medical facility.  Rather, it alleges that third-party MTC operated OCPF.  Id. ¶ 2.  Under these facts, Section 41-4-9 does not waive Otero County or Sheriff Black's immunity for negligent operation of a hospital, infirmary,

or like facility.  Lessen, 187 P.3d at 185; see also Shivner v. CorrValues, LLC, No. CIV 20-0497 RB/CG, 2022 WL 1014978, at *14 (D.N.M. Apr. 5, 2022) (finding that Section 41-4-9 did not waive the Grant County Board of County Commissioners' immunity for negligent operation of the medical facility at the Grant County Detention Center ("GCDC") because third-party CorrValues, LLC operated the medical facility within the GCDC); Salazar v. San Juan Cnty. Det. Ctr., Nos. CIV 15-0417 JB/LF, CIV 15-0439 JB/LF, CIV 15-0497 JB/LF, CIV 15-0526 JB/LF, 2016 WL 5376320, at *11 (D.N.M. Sept. 20, 2016) (finding that Section 41-4-9 did not waive San Juan County's immunity for negligent operation of the medical facility at San Juan Regional Medical Center ("SJRMC") because third-party Correctional Healthcare contracted to provide healthcare at SJRMC); Kellum v. Bernilillo Cnty., No. 1:14-cv-00163 RB/CG, 2015 WL 12859577, at *10 (D.N.M. June 9, 2015) (finding that Section 41-4-9 did not waive Bernalillo County or the Bernalillo County Commission's immunity for negligent operation of the medical facility at the Metropolitan Detention Center ("MDC") because an independent contractor, Correctional Healthcare Companies, Inc., operated the medical unit at MDC).

The Court finds Plaintiff's arguments unavailing.  Although he argues that that Otero County is vicariously liable for the negligence of its public employees acting within the scope of their duties, ECF No. 65 at 14, the Amended Complaint does not allege that any Otero County employee was negligent in the provision of medical services.  Furthermore, Plaintiff cites no authority applying "the common-law doctrine of hospital corporate negligence" to waive sovereign immunity under Section 41-4-9, and it appears that applying the doctrine would subvert Lessen.

The Court further finds that Plaintiff's reliance on Silva and Campbell is misplaced.  Silva established that the doctrine of respondeat superior applies to claims under the NMTCA.  745 P.2d at 385 ("A governmental entity is not immune from liability for any tort of its employee acting

within the scope of duties for which immunity is waived.") (citing N.M. Stat. Ann. § 41-4-4(A)). Here, MTC is not alleged to be an employee of Otero County or Sheriff Black—it is alleged to be an independent contractor.  ECF No. 55 ¶ 2 (alleging that "MTC operated and maintained OCPF as a <u>privately-run</u> state prison facility under color of state law <u>pursuant to a contract</u> with Defendant Otero County Board of County Commissioners") (emphases added).  Finally, nothing in <u>Campbell</u>—which merely finds that Section 41-4-9 applies to a prison's health care services— displaces <u>Lessen</u>'s clear holding.

For these reasons, Otero County and Sheriff Black are entitled to immunity as to Plaintiff's negligent operation of a hospital, infirmary, or like facility claim in Count III.

**b.  The NMCD Defendants**

The NMCD Defendants argue that the Amended Complaint does not allege that they (1) operated a hospital, infirmary, or like facility; or (2) provided medical care to Plaintiff.  ECF No. 60 at 9-11.  They further argue that "when a governmental entity operating a detention facility contracts with a third-party to provide medical care at the facility, the waiver enumerated in § 41-4-9 is inapplicable."  <u>Id.</u> at 10 (citing <u>Lessen</u>, 187 P.3d at 185).  In this regard, they argue that the Amended Complaint alleges that NMCD contracted with Wexford to provide medical services to inmates.  <u>Id.</u> at 11 (citing Am. Compl. ¶ 325).

In his Response, Plaintiff argues that NMCD is vicariously liable for the negligence of its public employees acting within the scope of their duties.  ECF No. 63 at 1 (citing <u>Silva</u>, 745 P.2d at 385).  In this regard, Plaintiff argues that the Amended Complaint plausibly alleges that: (1) NMCD and its public employees operate the Long Term Care Unit at CNMCF, ECF No. 63 at 17 (citing Am. Compl. § C); and (2) the NMCD Defendants "failed to heed the standards of care articulated by other professionals" and "instead subjected Plaintiff to substandard care as well as

delays and denials of access to any proper care[,]" id. at 18 (citing Am. Compl. ¶¶ 133-34, 154-56, 156-59, 166-70, 177-81).  He further appears to argue that the NMCD Defendants can be held liable for "operational negligence" based on the care provided by "Dr. Tuggle," an oral surgeon, because he was not a Wexford employee.  Id. at 19 (citing Am. Compl. ¶¶ 168-70, 177).  Plaintiff further argues that the Court should apply "the common-law doctrine of hospital corporate negligence" under which a hospital that "employs or contracts with health-care providers still 'owes an independent duty of care to patients at the hospital.'"  ECF No. 63 at 17 (quoting Diaz, 881 P.2d at 749).  In this regard, he appears to argue that the NMCD Defendants can be held liable for negligently hiring Wexford to run CNMCF's medical facility because they were on notice of Wexford's "deficient performance in the past . . . ."  Id. at 18 (citing Compl. ¶¶ 154-56).  Plaintiff further argues that Lessen does not apply in this case because the NMCD Defendants were not parties in Lessen and Lessen was decided at the summary judgment stage.  Id. at 19.  He further argues that Lessen does not apply because Wexford's medical staff are "public employees" under Section 41-4-3(F)(7) of the NMTCA, and "NMCD is the 'governmental entity' required to pay settlements or judgments against" them.  Id. at 20-21.

In their Reply, the NMCD Defendants maintain that the Amended Complaint does not allege that an NMCD physician or other licensed health care provider employed by NMCD provided negligent care to Plaintiff[,]" and such an inference is not plausible "given Plaintiff's allegation that NMCD contracted with Wexford Health Sources in 2019 to provide medical care in NMCD facilities."  ECF No. 73 at 8.  The NMCD Defendants further argue that Silva is inapposite and "does not stand for the proposition that NMCD's alleged failure to heed the medical advice of medical professionals meets the waiver of immunity provided by Section 41-4-9 . . . ."  Id. at 9.  They further argue that the common law doctrine of hospital corporate negligence is

inapplicable.  <u>Id.</u>  They further argue that Plaintiff's failure to cite any authority supporting his argument that the NMCD Defendants can be held liable for "operational negligence" because it negligently hired Wexford suggests there is no authority supporting the argument.  <u>Id.</u> (citing <u>Curry v. Great Nw. Ins. Co.</u>. 320 P.3d 482, 489 (N.M. Ct. App. 2013) ("Where a party cites no authority to support an argument, we may assume no such authority exists.")).   Finally, the NMCD Defendants argue that Plaintiff's attempt to distinguish <u>Lessen</u> are unavailing.  <u>Id.</u> at 9-10.

The Court agrees with Plaintiff that Wexford's licensed medical and dental practitioners are "public employees" for whom the NMTCA waives immunity, and will confine its discussion to that issue.

As previously stated, Section 41-4-9 waives immunity "for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of <u>public employees</u> while acting within the scope of their duties in the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities."   N.M. Stat. Ann. § 41-4-9 (emphasis added).  The NMTCA's definition of "public employee" includes certain independent contractors, including "licensed medical, psychological or dental arts practitioners <u>providing services to the corrections department pursuant to contract</u>[.]"  N.M. Stat. Ann. § 41-4-3(F)(7) (emphasis added).

Here, the Amended Complaint alleges that Wexford contracted with NMCD "to provide comprehensive health care services to inmates in state custody, including Plaintiff David Lee Bradshaw, at NMCD facilities.  Those facilities included the [CNMCF] near Los Lunas, New Mexico."  ECF No. 55 ¶ 13; <u>see also</u> <u>id.</u> ¶ 325.  Thus, the Court finds that Wexford's licensed medical, psychological and dental arts practitioners are "public employees" for whom the NMTCA has waived immunity under Section 41-4-9.  <u>See</u> <u>Lymon v. Aramark Corp.</u>, 728 F. Supp. 2d 1207, 1219 (D.N.M. 2010) (finding that the NMTCA governed the plaintiff's state tort claims against

24

Wexford pursuant Section 41-4-3(F)(7) because Wexford "and its duly licensed healthcare-practitioner employees provided medical care to inmates, including to [the plaintiff], at the Central New Mexico Correctional Facility pursuant to Wexford's contract with the New Mexico Department of Corrections").

The Court further finds that Lessen is distinguishable because that case did not assert claims of negligence by "licensed medical, psychological or dental arts practitioners providing services to the corrections department pursuant to contract[.]"  N.M. Stat. Ann. § 41-4-3(F)(7). Rather, the plaintiff in Lessen asserted negligence by a private corporation providing services to the City of Albuquerque pursuant to a contract.  187 P.3d at 180.

The Court further finds that when construed in the light most favorable to Plaintiff, the Amended Complaint plausibly alleges that Wexford's licensed medical and dental practitioners were negligent in the provision, or failure to provide, medical services to Plaintiff.  See ECF No. 55 ¶¶ 14-16, 131-36, 140, 150-60, 166-73, 177-79, 464-69.  Briefly, the Amended Complaint alleges that despite Plaintiff's obvious and known "serious medical needs," Wexford and its employees routinely failed to transport him to his follow-up appointments and otherwise failed to provide continuity of care; his condition deteriorated; he suffered infections in his mouth; and rather than provide him the medical care and corrective surgery that was recommended, "Defendants Wexford, Paudel, Rounseville, and other Wexford employees advised Mr. Bradshaw to simply postpone that care until after his release date."  Id. ¶ 178.  Since his release, Plaintiff has received extensive treatment for the injuries, including multiple surgeries.  Id. ¶¶ 181-85.

Because New Mexico has waived immunity for Wexford's licensed medical and dental practitioners, NMCD is not entitled to immunity as to Plaintiff's negligent operation of a hospital, infirmary, or like facility claim in Count IV.

However, because the Amended Complaint does not allege any acts or omissions by Secretary Lucero that would give rise to tort liability under Silva, 745 P.2d at 386, the Court finds that Secretary Lucero is entitled to immunity as to Plaintiff's negligent operation of a hospital, infirmary, or like facility claim in Count IV.

### 3.   Section 41-4-12

Next, Defendants argue that the NMTCA's waiver of immunity for certain torts committed by a "law enforcement officer," N.M. Stat. Ann. § 41-4-12, is inapplicable in this case.  ECF No. 59 at 3-4; ECF No. 60 at 6-9; ECF No. 72 at 6-7.

Section 41-4-12 "waives immunity for intentional torts such as assault, battery, false imprisonment, and deprivation of constitutional rights only when they are committed by law enforcement officers acting within the scope of their duties."  Garcia v. Martinez, 414 F. Supp. 3d 1348, 1357 (D.N.M. 2019) (hereafter, "Garcia I").  "To succeed on a claim under § 41-4-12, 'a plaintiff must demonstrate that the defendant [was a] law enforcement officer[ ] acting within the scope of their duties, and that the plaintiff's injuries arose out of either a tort enumerated in [the NMTCA] or a deprivation of a right secured by law.'"  Id. (quoting Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't, 916 P.2d 1313, 1316 (N.M. 1996)).

As an initial matter, the Parties dispute which version of Section 41-4-12 applies.  The version of the statute that was effective prior to May 19, 2020 read:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

N.M. Stat. Ann. § 41-4-12 (2019).  Prior to the March 19, 2020 amendments to Section 41-4-12, the NMTCA defined "law enforcement officer" as "a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor[.]"  N.M. Stat. Ann § 41-4-3(D).  Under this definition, "[t]he principal duties of a public employee determine if they are a 'law enforcement officer' under the NMTCA."  Garcia I, 414 F. Supp. 3d at 1357 (citing Vigil v. Martinez, 832 P.2d 405, 411 (N.M. Ct. App. 1992)).  This inquiry looks to whether the defendants' principal duties are: "(1) "to hold in custody any person accused of a criminal offense," (2) "to maintain public order," or (3) "to make arrests for crimes[.]"  Vigil, 832 P.2d at 411 (quoting Anchondo v. Corr. Dep't, 666 P.2d 1255, 1257 (N.M. 1983)).  Courts within this district found that corrections officers at state facilities were not "law enforcement officers" under this version of the NMTCA.  Lymon, 728 F. Supp. 2d at 1269-70; Aicher v. Ali, No. CIV 15-0552 JB/SCY, 2016 WL 3129628, at *3 (D.N.M. May 31, 2016).

The New Mexico legislature amended Section 41-4-12 effective May 19, 2020 to define "law enforcement officer" as "a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of committing a crime, whether that duty extends to all crimes or is limited to specific crimes."  N.M. Stat. § 41-4-12 (eff. May 19, 2020).  It also added a waiver of immunity for a law enforcement officer's "failure to comply with duties established pursuant to statute or law[.]"  Id.  The legislature amended the statute again, effective September 20, 2020, to specify additional torts that were subject to the waiver of immunity.

Plaintiff argues that "the applicable version of the NMTCA is the one 'in effect when the suits became pending cases.'"  ECF No. 63 at 9 (quoting <u>Methola v. Eddy Cnty.</u>, 622 P.2d 234, 237 (N.M. 1980); <u>see also</u> <u>id.</u> (citing <u>Grygorwicz v. Trujillo</u>, 140 P.3d 550, 552 (N.M. Ct. App. 2006)).

Defendants argue that the applicable version of Section 41-4-12 is the one in effect on March 1, 2020—the date Plaintiff was assaulted by Mr. Padilla and suffered his injuries.  They argue that in New Mexico statutes generally apply prospectively "'unless the Legislature manifests clear intent to the contrary.'"  ECF No. 70 at 3 (quoting <u>Wood v. N.M. Educ. Ret. Bd.</u>, 250 P.3d 881, 885-86 (N.M. Ct. App. 2010)).  They argue that "[w]here the language of a statute 'does not specifically evince a legislative intent that the act should be applied retrospectively,' the law must be applied prospectively."  <u>Id.</u> (quoting <u>City of Albuquerque v. New Mexico ex rel. Vill. of Los Ranchos de Albuquerque</u>, 808 P.2d 58, 66 (N.M. Ct. App. 1991)).

The Court agrees with Plaintiff that the Supreme Court of New Mexico's decision in <u>Methola</u> controls the Court's inquiry and compels the conclusion that the applicable statute is the version in effect when Plaintiff filed his lawsuit.  622 P.2d at 236-37.  <u>Methola</u> was a consolidated appeal involving three separate cases.  <u>Id.</u> at 235.  In one of the cases, Guadalupe Hernandez was beaten unconscious in a jail cell by fellow inmates in 1976 when one version of the NMTCA was in effect.  622 P.2d at 236.  The New Mexico Legislature amended the NMTCA in 1977, and Hernandez's representative filed a lawsuit against governmental entities and employees after the amendments took effect, invoking the waiver of immunity for bodily injury resulting from torts caused by law enforcement officers while acting within the scope of their duties.  <u>Id.</u>  A jury returned a verdict in favor of Hernandez, but the court of appeals reversed, finding that the

defendants were entitled to immunity under the NMTCA.  Id. at 235-36.  The New Mexico

Supreme Court granted certiorari and reversed.  See id.  Relevant here, it found:

> The Tort Claims Act is a remedial act which applies only prospectively, in the
> absence of expressed legislative intent to make it retroactive.  Since the right to sue
> governmental entities and their officials was governed entirely by statute, the
> applicable statutes are those which were in effect when the suits became pending
> cases.

Id. at 236-37 (emphasis added) (internal citation omitted).

The case at bar is materially indistinguishable from Methola: Plaintiff was allegedly

assaulted in a prison facility by fellow inmates on March 1, 2020, when one version of Section 41-

4-12 was in effect; on May 19, 2020 and September 20, 2020, amendments to Section 41-4-12

became effective; and on February 24, 2022, Plaintiff initiated this lawsuit.  Pursuant to Methola,

the applicable version of Section 41-4-12 is the one which was in effect when this suit became

pending on February 24, 2022.[5]  622 P.2d at 236-37.  On the date this lawsuit was filed, Section

41-4-12 read:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978
> does not apply to liability for personal injury, bodily injury, wrongful death or
> property damage resulting from assault, battery, false imprisonment, false arrest,
> malicious prosecution, abuse of process, libel, slander, defamation of character,
> violation of property rights, the independent tort of negligent spoliation of evidence
> or the independent tort of intentional spoliation of evidence, failure to comply with
> duties established pursuant to statute or law or any other deprivation of any rights,
> privileges or immunities secured by the constitution and laws of the United States
> or New Mexico when caused by law enforcement officers while acting within the

---

[5]     The Court observes that two cases from the Court of Appeals of New Mexico suggest that the
applicable version of Section 41-4-12 is the one in effect "when the conduct underlying Plaintiff's claim occurred . . .
."  Sanders v. N.M. Corrs. Dep't, 528 P.3d 716, 718 n.1 (N.M. Ct. App. 2022); Enriquez v. N.M. Dep't of Corrs., No.
A-1-CA-39033, 2022 WL 17413723, at *1 n.1 (N.M. Ct. App. 2022) ("Our Legislature amended Section 41-4-12 in
2020, but because the incident at issue occurred in 2016, those amendments do not apply to the present case.").  It is
unclear whether the complaints in Sanders and Enriquez were filed pre- or post-amendment, and it does not appear
that the plaintiffs argued that the post-amendment version of the statute should apply.  Regardless, the Court of
Appeals of New Mexico is bound by the precedents of the Supreme Court of New Mexico, Alexander v. Delgado,
507 P.2d 778, 779 (N.M. 1973), and because the Supreme Court of New Mexico has clearly held that the applicable
version of the NMTCA is the one in effect when a suit becomes a pending case, Methola, 622 P.2d at 236-37, the
Court finds the statements in Sanders and Enriquez unpersuasive.

scope of their duties.  For purposes of this section, "law enforcement officer" means a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of committing a crime, whether that duty extends to all crimes or is limited to specific crimes.

N.M. Stat. Ann. § 41-4-12.

### a.  Otero County and Sheriff Black

Plaintiff argues that Otero County may be held liable for "administrative and supervisory tasks" and may be held vicariously liable for the acts of County employees who are law enforcement officers under Section 41-4-12.  Id. at 7-8.  He further argues that he "is not required to name an individual public employee as a defendant to trigger the waivers of immunity for law enforcement officers or other types of public employees in the NMTCA."  Id. at 8.

Plaintiff argues that Sheriff Black is subject to the waiver of immunity in Section 41-4-12 because the Amended Complaint plausibly alleges that a battery occurred at OCPF, and "refers to a New Mexico statute which specifically requires Defendant Black to act as the conservator of the peace within Otero County, suppress assaults and batteries, and cause all offenders to keep the peace."  ECF No. 64 at 13-14.  He argues that the Amended Complaint details

> the risks and dangers to inmates housed at OCPF, including Plaintiff, that would be apparent to Defendant Black and his deputies if they kept a proper lookout and carried out their duty to investigate OCPF as a major hub of criminal activity, particularly in the open dormitory pods where "pod bosses" for prison gangs ran an extortion racket during the entire time Plaintiff was housed there.

Id. at 14 (citing Wachocki v. Bernalillo Cnty. Sheriff's Dep't, 228 P.3d 504, 511 (N.M. Ct. App. 2009)).  He argues that "[a]s the County Sheriff, he had both common-law and statutory duties to be on the lookout for such criminal activity in his county and in facilities that specifically contracted with county government."  Id. at 17-18.  He argues that Sheriff Black "was on notice of a clearly established body of federal case law documenting the relationship between the illegal

activities of 'pod bosses' and prison gangs within correctional facilities and the dangers they present to inmates who are called out as state witnesses or 'snitches' for not acquiescing to such illegal activities."  Id. at 18 (citing Miller v. Kastelic, 601 F. App'x 660, 663-64 (10th Cir. 2015); Harris v. Matthews, 417 F. App'x 758, 760 (10th Cir. 2011); Dantrassy v. Van Hoesen, 398 F. App'x 368, 370-71 (10th Cir. 2010); Benefield v. McDowall, 241 F.3d 1267, 1271 (10th Cir. 2001); Mervin v. Furlong, 208 F. App'x 226 (Table), 2000 WL 248472, at *1 (10th Cir. 2000); Little v. Shelby Cnty., Tenn., 384 F. Supp. 2d 1169, 1186 n.42 (W.D. Tenn. 2005)).  He argues that while the Amended Complaint alleges that MTC operated OCPF, it "still relies on the County for law enforcement there[.]"  Id. at 19 (citing Am. Compl. ¶ 124).

The Court finds that the waiver of immunity found in Section 41-4-12 of the NMTCA does not apply to Sheriff Black or Otero County because the Amended Complaint does not plausibly allege that Plaintiff's injuries resulted from an assault or battery "caused by" Sheriff Black or any other Otero County employee while acting within the scope of his or her duties, or caused by Sheriff Black or a County employee's failure to comply with duties established pursuant to statute or law.

Count III alleges that Sheriff Black, "John Does 6-10, and other Otero County Sheriff's Deputies under their direct supervision and control were under a statutory duty to comply with New Mexico statutes and law, including NMSA 1978, Sections 4-37-4, 4-41-2, and 29-1-1, and to formulate and implement procedures to prevent the breach of these statutory duties."  Id. ¶ 457; see also id. ¶ 458.

Section 4-37-4 provides that "[i]t is the duty of every county sheriff, deputy sheriff, constable and other county law enforcement officer to: (1) enforce the provisions of all county ordinances; (2) diligently file a complaint or information alleging a violation if circumstances

would indicate that action to a reasonably prudent person; and (3) cooperate with the district attorney or other prosecutor in all reasonable ways."   Similarly, Section 29-1-1 provides, in relevant part:

> It is hereby declared to be the duty of every sheriff, deputy sheriff, constable and every other peace officer to investigate all violations of the criminal laws of the state which are called to the attention of any such officer or of which he is aware, and it is also declared the duty of every such officer to diligently file a complaint or information, if the circumstances are such as to indicate to a reasonably prudent person that such action should be taken, and it is also declared his duty to cooperate with and assist the attorney general, district attorney or other prosecutor, if any, in all reasonable ways.

Assuming arguendo that the Amended Complaint plausibly alleges that Sheriff Black and/or some other County employee violated these statutes by, for example, not arresting Mr. Padilla, it does not plausibly allege that such violation caused Plaintiff's personal or bodily injuries.

Section 4-41-2 provides that "[t]he sheriff shall be conservator of the peace within his county; shall suppress assaults and batteries, and apprehend and commit to jail, all felons and traitors, and cause all offenders to keep the peace and to appear at the next term of the court and answer such charges as may be preferred against them."   The Amended Complaint does not plausibly allege that Sheriff Black or any other County employee failed to suppress Mr. Padilla's assault and battery on Plaintiff because it simply does not allege that Sheriff Black or any County employee had operational control over OCPF.  Rather, it alleges that MTC had operational control over OCPF, ECF No. 55 ¶ 2, and that Defendant Ricardo Martinez "was employed by Defendant MTC on a full-time salaried basis as the Warden of OCPF" whose "duties as Warden included securing OCPF, protecting the health, safety, and welfare of individuals held in custody there, including Plaintiff David Lee Bradshaw, and exercising the powers of a peace officer with respect to arrests and enforcement of laws when on the premises at OCPF under NMSA 1978, Sections

33-1-17(E), 33-1-10, and 29-1-1[,]" id. ¶ 4.  The Amended Complaint does not allege that Sheriff

Black or any other County employee was tasked with the same obligations, and such an inference

is not plausible in light of the fact that OCPF was operated and maintained by a privately-held

independent contractor.  Id. ¶ 2.

Assuming arguendo that the Amended Complaint plausibly alleges that Sheriff Black

and/or another County employee violated Section 4-41-2 by not arresting Mr. Padilla, see id. ¶¶ 8-

9, 298, it does not plausibly allege that such violation caused Plaintiff's personal or bodily injuries.

For these reasons, Sheriff Black and Otero County are entitled to immunity as to Plaintiff's

neglect and dereliction of duty claim in Count III.

### b.  The NMCD Defendants

Plaintiff does not argue that NMCD or Secretary Lucero are "law enforcement officers"

for purposes of Section 41-4-12.  See ECF No. 63 at 6.  Rather, he argues that NMCD and Secretary

Lucero are vicariously liable for the torts of the law enforcement officers under their authority.  Id.

(citing Silva, 745 P.2d at 385).  He further argues that he is not required to name a specific law

enforcement officer to trigger the waiver of immunity.  Id. at 6-7 (citing Lopez v. Las Cruces

Police Dep't, 137 P.3d 670, 676 (N.M. Ct. App. 2006)).

Because the doctrine of respondeat superior applies to claims under the NMTCA, a

governmental entity may be held vicariously liable "for any tort of its employee acting within the

scope of duties for which immunity is waived."  Silva, 745 P.2d at 385.  New Mexico law does

not require that a specific employee be named as a party defendant in order to hold the employer

vicariously liable under the doctrine of respondeat superior.  Lopez, 137 P.3d at 676.  "To name a

particular entity in an action under the Tort Claims Act requires two things: (1) a negligent public

employee who meets one of the waiver exceptions under Sections 41–4–5 to –12; and (2) an entity

that has immediate supervisory responsibilities over the employee." <u>Abalos v. Bernalillo Cnty.</u> <u>Dist. Att'ys Off.</u>, 734 P.2d 794, 799 (N.M. Ct. App. 1987).  Because Plaintiff is attempting to hold the NMCD Defendants vicariously liable under the NMTCA's waiver of immunity for certain acts of law enforcement officers, the Amended Complaint must plausibly allege that a tortious act was committed by someone who meets the definition of "law enforcement officer."  <u>See id.</u>  As previously stated, "law enforcement officer" means "a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of committing a crime, whether that duty extends to all crimes or is limited to specific crimes."  N.M. Stat. Ann. § 41-4-12.

Count IV alleges that the NMCD Defendants are liable to Plaintiff under Section 41-4-12 for breaching their duties under NMCD Policy Nos. CD-170000 and 1761000, and New Mexico Statutes Annotated Sections 9-3-5(A), 9-3-5(B), 33-1-6(B), 33-1-10, and 32-2-11.  ECF No. 55 ¶¶ 476-83.  The Court will discuss each in turn.

First, as relevant here, Section 41-4-12 only waives immunity for personal or bodily injury resulting from a law enforcement officer's "failure to comply with duties established pursuant to <u>statute or law</u> . . . ."  N.M. Stat. Ann. § 41-4-12 (emphasis added).  The Court finds that NMCD Policy Nos. CD-170000 and 1761000 are not a "statute or law" and therefore do not impose duties upon law enforcement officers that create a cause of action under Section 41-4-12.  <u>See</u> <u>Hernandez</u> <u>v. Parker</u>, 508 P.3d 947, 956 n.3 (N.M. Ct. App. 2022) (finding that violations of the Law Enforcement Safe Pursuit Act, N.M Stat. Ann. §§ 29-20-1 to -4, which requires the chief law enforcement officer of every state, county and municipal law enforcement agency to enforce written policies governing the conduct of law enforcement officers who are involved in high speed pursuits, and outlines the mandatory minimum policies and requirements to address safe pursuit,

does not give rise to a cause of action under Section 41-4-12); see also Antonetti v. Santistefan, No. 21-cv-279-DHU-SMV, 2023 WL 171787, at *4 (D.N.M. Jan. 12, 2023) (finding that violations of NMCD Policies are not actionable under 42 U.S.C. § 1983 because "prison regulations and administrative policies are not intended 'to confer rights on inmates'") (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).  Therefore, the Court dismisses Count IV to the extent it is premised upon violations of NMCD Policy Nos. CD-170000 and 1761000.

Sections 9-3-5(A), 9-3-5(B), and 36-1-6(B) promulgate the powers and the duties of the Secretary of the New Mexico Corrections Department.  However, the New Mexico Supreme Court has held that the Secretary of the Corrections Department is not a "law enforcement officer" for purposes of the waiver of immunity found in Section 41-4-12.  Anchondo, 666 P.2d at 109.  The court reasoned:

> The Secretary of Corrections spends all his time in duties and responsibilities that are more accurately categorized as work of a public employee than work of a law enforcement officer.  He is a member of the "executive cabinet" headed by the governor.  § 9–3–4, N.M.S.A.1978 (Cum.Supp.1982); see generally §§ 9–1–1 through 9–1–12, N.M.S.A. 1978 (Repl.Pamp.1980).  His duties and general powers are specified in the "Corrections Department Act," Section 9–3–1 through 9–3–12, N.M.S.A. 1978 (Repl.Pamp.1980 and Cum.Supp.1982) and in Section 33–1–6, N.M.S.A. 1978 (Cum.Supp.1982).  According to these statutory provisions the Secretary of Corrections must manage all operations of the department (§ 9–3–5 A), exercise general supervisory authority over all department employees (§ 9–3–5 B(1)), delegate authority to subordinates as he deems necessary (§ 9–3–5 B(2)), organize the department into the most efficient organizational units (§ 9–3–5 B(3)), issue and enforce orders and instructions (§ 9–3–5 B(5)), and conduct research and studies that will improve the operations of the department (§ 9–3–5 B(6)).  Although these are only a few examples of the powers and duties of the Secretary of Corrections, it is apparent that according to statute, the Secretary possesses none of the traditional duties that are defined for law enforcement officers.  The Secretary of Corrections is basically the chief executive or administrative officer of the state's correction system.  § 9–3–4, N.M.S.A. 1978 (Cum.Supp.1982).  The majority, if not all of his time is spent on administrative duties. . . .
>
> From looking at the statutes, we see that neither the Secretary of Corrections nor the Warden engage in any of the traditional duties of "law enforcement officers."

They do not deal directly with the daily custodial care of prison inmates. Moreover, because they do not have commissions, they have no power to make arrests or to take people into custody should a violation of the public order occur. They are merely administrative officers appointed by the governor to oversee, administer, and supervise the state's corrections system.

The duties and responsibilities of the Secretary of Corrections and the Warden are primarily determined by statute. The principal duties of these positions do not encompass the duties and responsibilities usually associated with "law enforcement officers." Traditionally, the duties of law enforcement officers include preserving the public peace, preventing and quelling public disturbances, enforcing state laws, including but not limited to the power to make arrests for violation of state laws. See §§ 29–1–1 through 29–1–2, N.M.S.A. 1978 (Repl.Pamp.1979 and Cum.Supp.1982). Furthermore, most law enforcement officers must receive commissions from the lawfully constituted authorities. See § 29–1–9, N.M.S.A. 1978 (Repl.Pamp.1979). In determining whether a person is involved in law enforcement work, this Court has adhered to the concept of traditional law enforcement activities. We do not deviate from this concept in the present case.

Id.  Although Anchondo decided the issue applying the "principal duties" analysis to the definition of "law enforcement officer" found in Section 41-4-3(D), its reasoning applies equally to the definition of "law enforcement officer" found in Section 41-4-12, as amended May 19, 2020. Thus, the Court finds that Section 41-4-12 does not waive Secretary Lucero's immunity.  See id.; see also Lymon, 728 F. Supp. 2d at 1273.

The Court further finds that Secretary Lucero is not subject to vicarious liability for the tortious acts and omissions of NMCD employees.  Silva, 745 P.2d at 386 ("While [the secretary] may be liable for negligent performance of a duty [under Sections 41-4-6, 41-4-9, or 41-4-10], he is not subject to liability because of the negligent act or omission of some other employee, merely because of his executive position.").  Because Secretary Lucero is immune from suit and is not vicariously liable for the tortious acts of other NMCD employees, the Court dismisses Count IV to the extent it is premised upon alleged violations of Sections 9-3-5(A), 9-3-5(B), and 36-1-6(B).

36

Next, Section 33-1-10 provides, in relevant part, that correctional officers "shall have the power of a peace officer with respect to arrests and enforcement of laws when on the premises of a New Mexico correctional facility . . . ." N.M. Stat. § 33-1-10(A).  This statute merely authorizes correctional officers to make arrests; it does not require them to.  Therefore, the Court finds that Count IV fails to state a claim to the extent it is premised upon an alleged violation of Section 33-1-10(A).

Finally, Section 33-2-11 provides, in relevant part:

> The corrections department has the power and the duty to examine and inquire into all matters connected with the government, discipline and police of the corrections facilities and the punishment and treatment of the prisoners; the department, shall inspect the corrections facilities and listen to any complaints of oppression or misconduct on the part of the warden or any of the other employees under him; and for that purpose, the secretary of corrections has the power to issue subpoenas and compel attendance of witnesses and to administer oaths.

N.M. Stat. Ann. § 33-2-11(A).  In this regard, the Amended Complaint vaguely alleges that "John Does 11-15 were public employees of NMCD acting under color of state law within the scope of their duties under Section 41-4-3 of the NMTCA, and as law enforcement officers for purposes of Section 41-4-12 of the NMTCA, as amended[,]" ECF No. 55 ¶ 12; "John Does 11-15 were under a duty to examine and inquire into all matters connected with the government, discipline, and police of the corrections facilities and the punishment and treatment of prisoners under NMSA 1978, Section 33-2-11[,]" id. and "John Does 11-15 have engaged in a pattern and practice of failing to investigate illegal activities involving the county's own employees and facilities[,]" id. ¶ 287.  However, the Amended Complaint alleges no facts that give rise to the plausible inference that an NMCD employee who meets the definition of "law enforcement officer" engaged in acts or omissions that violate Section 41-4-12 of the NMTCA.  Robbins, 519 F.3d at 1250 (observing that in cases involving multiple institutional and individual defendants, "it is particularly important

. . . that the complaint make clear exactly <u>who</u> is alleged to have done <u>what</u> to <u>whom</u>, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state") (citing <u>Twombly</u>, 550 U.S. at 565 n.10).  <u>See also</u> <u>Pahls</u>, 718 F.3d at 1225 (stressing the "need for careful attention to particulars, especially in lawsuits involving multiple defendants").   Therefore, the Court dismisses Count IV to the extent it is premised upon alleged violations of Section 33-2-11.

For these reasons, the NMCD Defendants are entitled to immunity as to Plaintiff's neglect and dereliction of duty claim in Count IV.

### IV.   Conclusion

Accordingly, it is **HEREBY ORDERED** that:

1. Defendant Otero County Board of County Commissioners' Amended Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 59, is **GRANTED**;

2. Defendants New Mexico Corrections Department and Secretary Alisha Tafoya Lucero's 12(b)(6) Motion to Dismiss, ECF No. 60, is **GRANTED IN PART AND DENIED IN PART** consistent with this Order;

3. Defendant David Black's Motion to Dismiss under Rule 12(b)(6), ECF No. 61, is **GRANTED**;

4. Count III of the Amended Complaint is **DISMISSED WITHOUT PREJUDICE** as to Sheriff Black and Otero County;

5. Count IV of the Amended Complaint is

    a.  **DISMISSED WITHOUT PREJUDICE** as to Secretary Lucero; and

    **b.** **DISMISSED WITHOUT PREJUDICE** as to NMCD to the extent it seeks to hold

       NMCD liable under the waivers of immunity found in N.M. Stat. Ann. §§ 41-4-6

       and 41-4-12;

**6.** NMCD shall have fourteen days from the date of this Order to file an Answer to the

Amended Complaint.


                                               **MARGARET STRICKLAND**
                                               UNITED STATES DISTRICT JUDGE